2007-NMSC-014

156 P.3d 704

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Leslie KERBY, Defendant–Respondent.**

**State of New Mexico, Plaintiff–Respondent,**

v.

**Leslie Kerby, Defendant–Petitioner.**

**Nos. 29,336, 29,533.**

Supreme Court of New Mexico.

March 16, 2007.

Rehearing Denied April 11, 2007.

Gary K. King, Attorney General, Martha Anne Kelly, Assistant Attorney General, Santa Fe, NM, for Plaintiff.

Titus & Murphy Law Firm, Victor A. Titus, Farmington, NM, for Defendant.

## OPINION

SERNA, Justice.

{1} Defendant, Leslie Kerby, was charged with thirteen counts of criminal sexual contact of a minor ("CSCM") in violation of

NMSA 1978, § 30–9–13(A)(1) (2001, prior to 2003 amendment). Only four of the thirteen counts were submitted to the jury, and the jury convicted Defendant on three counts. Defendant challenges his convictions on the basis that the statute of limitations barred the State from prosecuting him; that the trial judge improperly admitted evidence of a peephole between Defendant's bedroom and Victim's bathroom; and that Defendant's right to a speedy trial was violated. The Court of Appeals concluded that the trial court erred in admitting the peephole evidence and that Defendant was presumptively prejudiced by the thirteen-month delay in commencing trial. *State v. Kerby*, 2005–NMCA–106, ¶¶ 1, 20, 44, 138 N.M. 232, 118 P.3d 740. The Court of Appeals remanded the speedy trial issue for further analysis and held that Defendant could also raise the statute of limitations issue at that time. *Id.* ¶¶ 41, 44.

{2} In a separate appeal, the State raised issues regarding Defendant's court-ordered treatment after serving his sentence. When Defendant neared the end of his sentence, he moved the trial judge to alter the terms of his treatment. Defendant sought to attend outpatient treatment, rather than an inpatient treatment facility as originally ordered, since attending an inpatient facility was an impossibility given the long waiting list. The trial judge entered a new order that substituted an outpatient treatment provider; however, the State appealed, arguing inter alia that the victim has a right to participate in this decision. The Court of Appeals agreed with the State, reversing the district court's order and ordering reinstatement of the original sentence. *State v. Kerby*, No. 25,891, memorandum op. at 4 (Ct.App. Oct. 19, 2005). Defendant appealed to this Court. After granting Defendant's Petition for a Writ of Certiorari, we consolidated the two cases.

{3} We hold that the statute of limitations is a substantive right that may only be waived by a defendant after consultation with counsel, and only if the waiver is knowing, intelligent, and voluntary. The testimony at trial established that the four counts which the jury considered involved only events which were barred by the statute of

limitations. *See* NMSA 1978, § 30–1–9.1 applicability note (1987). Defendant's attorney admitted that he did not consult with Defendant about the statute of limitations because he failed to recognize the issue. For these reasons, Defendant would not have been convicted had the statute of limitations defense been raised before trial. Thus, we vacate Defendant's convictions.

{4} Because we find the statute of limitations issue dispositive in vacating Defendant's convictions, we decline to address the issues Defendant raises regarding the speediness of his trial. Nor do we address the merits of the second appeal addressing the trial judge's actions in substituting an outpatient treatment provider or the victim's participation in that decision. We do, however, note that the Court of Appeals erred in holding that the peephole evidence was inadmissible propensity evidence under Rule 11–404(B) NMRA. *Kerby*, 2005–NMCA–106, ¶¶ 1, 20. We recently addressed the admissibility of other acts for non-propensity purposes, including intent, in *State v. Otto*, 2007–NMSC–012, 141 N.M. 443, 157 P.3d 8, 2007 WL 1192015 (N.M. 2007) and *State v. Gallegos*, 2007–NMSC–007, 141 N.M. 185, 152 P.3d 828.

## I. FACTS

{5} Inasmuch as we find the statute of limitations issue dispositive, we review only the facts relevant to that issue. Defendant lived with Victim and Victim's mother from 1986 to 1988. During this time, Victim was six and seven years old. When Victim became an adult, she alleged that Defendant sexually abused her. On March 28, 2002, Defendant was charged by criminal information with thirteen counts of criminal sexual contact of a minor, a third degree felony. *See* § 30–9–13(A)(1).

{6} At trial, Victim testified that she could recall four specific instances of touching. Victim also recalled four "clips," as she called them, in which she could recall Defendant leaving her room, but in which she did not actually recall Defendant touching her, and approximately five more instances in which Victim "knew" Defendant touched her, but for which she had no specific memory.

**416**

{7} Victim testified as follows with respect to the four specific instances of touching she could recall. In the summer of 1986, Victim and her mother moved into a trailer with Defendant. In October 1986, they moved to a house with Defendant. Regarding the first instance of touching, Victim testified that Defendant rubbed her vulva a couple of months after Victim and her mother moved into the trailer (summer 1986), but before they moved to the house (fall 1986). Victim testified that the second time Defendant touched her was when he rubbed her buttocks while she was sleeping on the couch inside the trailer (summer 1986). Regarding the third instance, Victim testified that Defendant again rubbed her buttocks at the end of 1986, shortly after they moved to the house. Finally, the last specific recollection Victim had of Defendant inappropriately touching her was "[a]bout a month or so later" in the beginning of 1987.

{8} Because Victim testified consistently that she could recall only four specific instances of Defendant touching her, the trial court dismissed nine of the thirteen counts at the close of the State's case. At the same time, the criminal information was amended to allege incidents occurring between June 1, 1986, and December 31, 1987. Nevertheless, the trial court made very clear that it was sending to the jury only those four counts that were tied to Victim's specific recollections, which occurred between summer 1986 and the beginning of 1987. The jury convicted Defendant on three of those four counts.

{9} On appeal, Defendant challenged his convictions on the basis that the statute of limitations barred the State from prosecuting him; that the trial judge improperly admitted evidence of a peephole between Defendant's bedroom and Victim's bathroom; and that Defendant's right to a speedy trial was violated. The Court of Appeals concluded that the trial judge erred in admitting the peephole evidence under Rule 11–404(B). *Kerby*, 2005–NMCA–106, ¶¶ 1, 20. In addition, the Court of Appeals rejected the trial judge's finding that the case was a complex case for speedy trial purposes and found that the thirteen-month delay in commencing trial was presumptively prejudicial. *Id.* ¶ 44.

The Court of Appeals remanded the speedy trial issue for further analysis. *Id.*

{10} Defendant raised the statute of limitations defense for the first time on appeal. *Id.* ¶ 39. Defendant's attorney admitted that he did not consult with Defendant about the statute of limitations because he failed to recognize the issue. Indeed, the Court of Appeals acknowledged that "[n]either defense counsel, the prosecutor, nor the district court appears to have recognized that the State was prohibited by Section 30–1–8 from prosecuting Defendant for touchings that occurred prior to June 19, 1987." *Id.* The Court of Appeals did not analyze the statute of limitations defense but concluded that Defendant could raise it on remand. *Id.* ¶ 41.

## II. STANDARD OF REVIEW

{11} "When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts." *Haas Enters., Inc. v. Davis*, 2003–NMCA–143, ¶ 9, 134 N.M. 675, 82 P.3d 42 (citing *Inv. Co. of the Sw. v. Reese*, 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994)). We review questions of law de novo. *Id.* We look at the trial proceedings to determine if the facts relevant to the statute of limitations were in dispute. Defendant did not dispute the factual time frame relevant to the statute of limitations at trial, but raised the legal issue for the first time on appeal. *Kerby*, 2005–NMCA–106, ¶ 39. Thus, we conclude that the relevant facts were not in dispute and, accordingly, review de novo Defendant's statute of limitations defense.

## III. THE STATUTE OF LIMITATIONS IS A SUBSTANTIVE RIGHT THAT CAN BE WAIVED ONLY BY A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER, AFTER CONSULTATION WITH COUNSEL

{12} Defendant argues that the three counts for which he was convicted are barred by the statute of limitations. Defendant claims that the statute of limitations is "jurisdictional" and, thus, the district court was without jurisdiction to try and sentence him. The State, by contrast, argues that the stat-

ute of limitations is an "affirmative equitable defense" that can be "waived." Defendant counters that, even if the statute of limitations can be waived, he did not knowingly waive the defense. Further, to the extent Defendant waived this defense, he argues that his counsel was ineffective in not raising the defense pre-trial.

{13} In the civil litigation context, the statute of limitations defense is generally an affirmative defense that is lost if not properly pled. Rule 1–008(C) NMRA; *see Wilson v. Denver*, 1998–NMSC–016, ¶ 9, 125 N.M. 308, 961 P.2d 153 (citing *Chavez v. Kitsch*, 70 N.M. 439, 442–43, 374 P.2d 497, 499 (1962)); *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006–NMCA–084, ¶¶ 28–30, 140 N.M. 111, 140 P.3d 532. Civil statutes of limitations exist "to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims." *Garcia v. La Farge*, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995); *see also Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879) (noting that civil statutes of limitations exist to give "security and stability to human affairs" and to "stimulate ... activity and punish negligence"). However, "[t]he criminal limitations statute is only partially similar in form and purpose to its civil counterpart and is clearly different in its overall place and function in the law." Alan L. Adlestein, *Conflict of the Criminal Statute of Limitations with Lesser Offenses at Trial*, 37 Wm. & Mary L.Rev. 199, 259 (1995). As the United States Supreme Court has recognized, criminal statutes of limitations are to be liberally construed in favor of a defendant because their purpose "is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).

{14} Our rules likewise recognize the distinction between civil and criminal statutes of limitations. Indeed, there is no counterpart to Rule of Civil Procedure 1–008(C) in our Rules of Criminal Procedure. While Rule 5–601(C)(1) NMRA provides that "defenses and objections based on defects in the initiation of the prosecution" must be raised before trial, our courts have never construed a statute of limitations defense as a "defect in the initiation of the prosecution." Nor should they. Other jurisdictions recognize the difference in either their case law or rules. *See, e.g.,* Conn.Super. Ct. R. § 41–8(1), (3) (providing that objections to a defect in the institution of the prosecution *and* a statute of limitations defense must be made prior to trial if capable of being determined); *Maguire v. State*, 453 So.2d 438, 440 (Fla.Dist. Ct.App.1984) (declining to construe a waiver of "all defects in the indictments" as a waiver of the statute of limitations); *City of Cleveland v. Hirsch*, 26 Ohio App.2d 6, 268 N.E.2d 600, 602 (1971) (holding that a statute requiring a defendant to object to a defect in the indictment or information before trial was inapplicable to a statute of limitations claim).

{15} Courts approach criminal statutes of limitations in one of three ways. First is the view that the statute of limitations is a jurisdictional limit on the subject matter of a court that cannot be waived or forfeited; second is the view that a defendant may "waive" the defense so long as he or she does so voluntarily, intelligently, and knowingly after consulting with counsel; finally, some courts hold that the statute of limitations is a defense that is "forfeited" if not affirmatively raised in the trial court. *See State v. Timoteo*, 87 Hawai'i 108, 952 P.2d 865, 877 (1997) (Ramil, J., dissenting); *State v. Pearson*, 858 S.W.2d 879, 886 (Tenn.1993); *Padie v. State*, 594 P.2d 50, 55–57 (Alaska 1979). Historically, courts took the first approach, that is, that once the statute of limitations ran, a court lacked subject matter jurisdiction. *Timoteo*, 952 P.2d at 877 (Ramil, J., dissenting); *see also People v. Verbrugge*, 998 P.2d 43, 45–46 (Colo.Ct.App.1999) (holding that, because the statute of limitations had run, the trial court had no jurisdiction to enter a conviction even though the defendant requested an instruction on the offense). Over time, however, courts have moved away from the jurisdictional view and toward deciding that a defendant may waive the defense if it is beneficial to him or her. *See Timoteo*, 952 P.2d at 877–78 (Ramil, J., dissenting); Adlestein, *supra,*

at 291. This appears to be because the primary policy of a criminal statute of limitations, to protect the defendant, is not served by strict adherence to a jurisdictional approach. *See id.*

{16} The evolution of the law in California is illustrative. In *People v. McGee,* the California Supreme Court held that the statute of limitations limited a court's subject matter jurisdiction and, thus, the issue could be raised at any time. 1 Cal.2d 611, 36 P.2d 378, 379–80 (1934). Over sixty years later, the court abrogated the *McGee* rule in *Cowan v. Superior Court,* 14 Cal.4th 367, 58 Cal.Rptr.2d 458, 926 P.2d 438 (1996). In that case, the defendant pled guilty to the lesser offense of voluntary manslaughter after being charged with three counts of murder. *Id.* at 439. Realizing that the statute of limitations had run on voluntary manslaughter, the district attorney became concerned that the defendant might be able to rely on *McGee* to reverse his conviction after the other charges were dismissed. *Id.* at 439–40. He thus moved to set aside the plea. *Id.* at 439. In response, the defendant stated that he was willing to waive the statute of limitations. *Id.* The lower court, however, found that the statute of limitations was a "jurisdictional defect and the parties can never stipulate to jurisdiction," and thus set aside the plea and reinstated the original charges. *Id.* Without specifically overruling the *McGee* jurisdictional rule,[1] the court in *Cowan* held that a defendant may waive the statute of limitations when: (1) the waiver is knowing, intelligent, and voluntary; (2) the defendant has consulted with counsel, and the waiver is for the defendant's benefit; and (3) the waiver does not handicap his or her defense or contravene any policies behind the statute of limitations. *Id.* at 440–41 (discussing *Padie,* 594 P.2d at 57).

{17} Three years later, in *People v. Williams,* the California Supreme Court was presented with an issue similar to the one we confront in the instant case: the defendant was charged with, and convicted of, a crime for which the statute of limitations had run.

21 Cal.4th 335, 87 Cal.Rptr.2d 412, 981 P.2d 42, 43 (1999). In *Williams,* the Attorney General argued that "because defendant did not assert the statute of limitations at trial, he has forfeited his right ever to do so, and that he must remain convicted of a felony and serve a prison sentence even if the prosecution is untimely and should have been dismissed." *Id.* at 44. The court rejected this argument:

> We now conclude that when the charging document indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time. If the court cannot determine from the available record whether the action is barred, it should hold a hearing or, if it is an appellate court, it should remand for a hearing.

*Id.* at 45; *see also Pearson,* 858 S.W.2d at 886–87 & n. 8 (adopting the waiver approach and providing examples of why a defendant might wish to affirmatively waive the defense).

■ {18} Based on our review of the various approaches, we hereby adopt the waiver approach and hold that the statute of limitations is a substantive right that may only be waived by a defendant after consultation with counsel, and only if the waiver is knowing, intelligent, and voluntary.

{19} We reject the forfeiture rule for two fundamental reasons. We conclude that "the protection of the statute of limitations is too important to be unintentionally lost." *Timoteo,* 952 P.2d at 878 (Ramil, J., dissenting). Besides the harsh policy of punishing defendants for failing to raise the statute of limitations in time, the forfeiture rule is also "an exercise in futility." *Williams,* 87 Cal. Rptr.2d 412, 981 P.2d at 45. As the *Williams* court explained:

> Defendants would usually gain indirectly by claiming ineffective assistance of counsel what a forfeiture rule would prevent them from gaining directly. A forfeiture rule would merely add a step to the litigation. Only those who admitted their guilt

---

1. The court limited its ruling to the exact situation presented, i.e., that a court does not lack subject matter jurisdiction over a time-barred

lesser offense when the statute of limitations has not run on the greater offense. *Id.* at 442.

right away and did not request an attorney could never gain relief.

*Id.* If we adopted the forfeiture rule in the instant case, Defendant would have a compelling ineffective assistance of counsel claim because he would not have been convicted but for his attorney's failure to raise the statute of limitations defense. In jurisdictions with a forfeiture rule, in numerous cases involving similar facts, courts have granted post-conviction relief outright on the basis of ineffective assistance of counsel or have remanded for an evidentiary hearing on the issue. *See, e.g., United States v. Hansel*, 70 F.3d 6, 8 (2d Cir.1995) (per curiam); *Byrd v. State*, 754 So.2d 191, 192 (Fla.Dist.Ct.App. 2000) (per curiam); *People v. Gwinn*, 255 Ill.App.3d 628, 194 Ill.Dec. 362, 627 N.E.2d 699, 701–02 (1994); *People v. Brocksmith*, 237 Ill.App.3d 818, 178 Ill.Dec. 536, 604 N.E.2d 1059, 1065–66 (1992); *Commonwealth v. Barrett*, 418 Mass. 788, 641 N.E.2d 1302, 1306, 1308 (1994); *State v. Wiemer*, 3 Neb. App. 821, 533 N.W.2d 122, 133–34 (1995). Thus, if we adopted the forfeiture rule, we would expend judicial (and executive) resources addressing Defendant's ineffective assistance of counsel claim and ultimately delay the inevitable vacating of Defendant's convictions.

## IV. WE VACATE DEFENDANT'S CONVICTIONS BECAUSE DEFENDANT DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE HIS STATUTE OF LIMITATIONS DEFENSE AFTER CONSULTING WITH COUNSEL

■ {20} Having adopted the waiver approach to the statute of limitations, we hold that Defendant did not knowingly, intelligently, and voluntarily waive this defense after consulting with his counsel. To the contrary, Defendant's counsel candidly admitted in his briefing and oral argument that he simply did not think of the defense. We, therefore, vacate Defendant's convictions because, as discussed below, it is clear from the record that had the defense been utilized, Defendant would not have been convicted.

{21} Defendant was initially charged by information with thirteen counts of criminal sexual contact of a minor, a third degree felony, on March 28, 2002. *See* § 30–9–13(A)(1). The charges were based on Victim's recollection of: (1) four instances of touching that she could specifically recall; (2) four "clips" she could recall of Defendant leaving her room but in which she did not actually recall Defendant touching her; and (3) five more instances in which Victim "knew" Defendant touched her but for which she had no specific memory. A third degree felony typically has a statute of limitations of five years. NMSA 1978, § 30–1–8(B) (1997, prior to 2005 amendment). In 1987, however, the Legislature enacted a tolling provision which provides that the statute of limitations for certain crimes, including CSCM, is tolled until the alleged victim reaches the age of eighteen or the crime is reported to law enforcement, whichever occurs first. NMSA 1978, § 30–1–9.1 (1987). Victim turned eighteen on June 22, 1998. At first blush, it would seem that Defendant should have no statute of limitations defense since five years had not elapsed between Victim's eighteenth birthday and the date the information was filed, March 28, 2002. This tolling provision, however, is only applicable to crimes committed on or after June 19, 1987. Section 30–1–9.1 applicability note; *see Kerby*, 2005–NMCA–106, ¶ 37 n. 1. Thus, if it is clear that the three crimes for which Defendant was convicted occurred before June 19, 1987, then Defendant would not have been convicted had the statute of limitations defense been raised before trial.

{22} Victim testified consistently that she could only recall four specific instances of touching. Because of this, the trial court dismissed nine of the thirteen counts at the close of the State's case. While the criminal information was amended at that time to allege incidents occurring between June 1, 1986, and December 31, 1987, the trial court was very clear that the only counts going to the jury were the ones tied to Victim's specific recollection.

{23} We note that Victim also testified with respect to four "clips" and five instances in which she "knew" Defendant had touched her, but of which she had no specific recollection, continuing into late 1987. However, the judge appropriately dismissed the related

counts at the close of the State's case-in-chief. The only instances of touching the jury considered, thus the only ones that matter, were the ones tied to Victim's specific recollections. Therefore, we do not consider the timing of these other incidents in our statute of limitations analysis.

{24} For clarity, we describe those four specific instances again here. Victim testified that the first instance of touching, when Defendant allegedly rubbed her vulva, occurred a couple of months after Victim and her mother moved into Defendant's trailer (summer 1986), but before they moved to a house with Defendant (fall 1986). Victim testified that the second time Defendant touched her was when he rubbed her buttocks, while she was sleeping on the couch inside the trailer, thus in the summer of 1986. Regarding the third instance, Victim stated that Defendant again rubbed her buttocks at the end of 1986, shortly after they moved to the house. Finally, the last specific recollection Victim had of Defendant inappropriately touching her was "[a]bout a month or so later," in the beginning of 1987. It is, therefore, clear from the record that, according to Victim's testimony, the last time Defendant touched her was before the critical date of June 19, 1987. Defendant was acquitted of the charge related to the touching of Victim's vulva, but was convicted of the three charges related to the touching of Victim's buttocks. Since these three instances happened before the critical statute of limitations date of June 19, 1987, the statute of limitations ran five years after they occurred, and Defendant would not have been convicted had the statute of.limitations defense been raised. Because Defendant did not waive the statute of limitations defense and because Defendant would not have been convicted had the issue been raised, we hereby vacate Defendant's convictions.

## V. THE PEEPHOLE EVIDENCE WAS ADMISSIBLE TO SHOW INTENT UNDER RULE 11-404(B)

■ {25} Although we find the statute of limitations issue dispositive in vacating Defendant's convictions, we are compelled to address briefly the admissibility of the peep-hole evidence under Rule 11-404(B). Rule 11-404(B) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." We recently analyzed this rule in *Otto* and held that evidence of other acts is admissible under Rule 11-404(B) if relevant to a material issue other than the Defendant's character or propensity to commit a crime. 2007-NMSC-012, 141 N.M. 443, 157 P.3d 8 (N.M. Feb. 23, 2007); *see also Gallegos*, 2007-NMSC-007, ¶¶ 27-36, 141 N.M. 185, 152 P.3d 828.

■ {26} In the instant case, the trial court allowed evidence that Defendant constructed a peephole which allowed him to peer into Victim's bathroom while Defendant hid in a cubbyhole adjacent to the master bedroom, to rebut evidence that Defendant innocently touched Victim's buttocks. *Kerby*, 2005-NMCA-106, ¶¶ 9-15. Defendant injected the issue of intent by calling his mother to testify that Defendant told her the touch was merely a fatherly pat on the bottom. The Court of Appeals reversed, holding that the peephole evidence amounted to propensity evidence and was thus inadmissible under Rule 11-404(B). *Id.* ¶¶ 20-28. We disagree. A requisite element of the charged crime of CSCM is that the defendant's touch was "unlawful." *State v. Pierce*, 110 N.M. 76, 83, 792 P.2d 408, 415 (1990). "Unlawfulness" may be proven by showing defendant's behavior was "done … to arouse or gratify sexual desire." *State v. Osborne*, 111 N.M. 654, 661, 808 P.2d 624, 631 (1991). The evidence of the peephole was not admitted to prove "that sexual attraction to young female children was a trait of Defendant's character," as the Court of Appeals erroneously held. *Kerby*, 2005-NMCA-106, ¶ 28. The peephole evidence was admitted to show that when Defendant touched Victim's buttocks he did so with a sexual intent. As the Court of Appeals noted, Defendant's state of mind was "the crucial issue in the case." *Id.* ¶ 33. Thus, evidence of the peephole is precisely the type of non-propensity evidence that Rule 11-404(B) allows. Unless corrected,

the Court of Appeals opinion in the instant case would continue as good law with respect to the peephole evidence issue and could well misguide future trial courts.

## VI. CONCLUSION

{27} We hold that the statute of limitations is a substantive right that may only be waived by a defendant, after consultation with counsel, and only if the waiver is knowing, intelligent, and voluntary. Defendant did not knowingly, intelligently, and voluntarily waive his statute of limitations defense after consulting with counsel. Because it is clear that he would not have been convicted had the statute of limitations defense been raised, we hereby vacate Defendant's convictions.

{28} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.