This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        **NO. 27,474**

**ALVIN DENETSO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

Defendant appeals his conviction of one count of criminal sexual contact of a minor (CSCM) pursuant to NMSA 1978, Section 30-9-13(B)(2)(a) (2003). Defendant raises three issues on appeal: (1) the district court erred when it admitted evidence of uncharged touchings; (2) the district court erred in sentencing him for a second degree felony when the jury instructions and findings only support a third degree felony; and (3) the district court erred in not giving Defendant credit for his pre-sentence confinement. We reverse and remand this case to the district court for a new trial because the district court abused its discretion by admitting testimony regarding uncharged touchings, resulting in prejudicial error to Defendant. Because we determine that Defendant should be granted a new trial, we do not reach Defendant's remaining arguments regarding the legality of his sentence.

**BACKGROUND**

On August 12, 2005, Defendant was indicted on one count of CSCM, contrary to Section 30-9-13(B)(2)(a), which allegedly occurred on or about April 29, 2005. Defendant allegedly touched the vagina or vulva of A.M. (Victim), his girlfriend's daughter.

During the State's opening argument in Defendant's jury trial on October 25, 2006, the State asserted that Defendant began to touch Victim in 2001. Upon Defendant's objection, a bench conference was held, which was inaudible but later

reconstructed by the State and incorporated into the official transcript of the proceedings. During the bench conference, the State argued that since CSCM leaves no evidence and the State only charged one count of CSCM, it was necessary for the State to introduce evidence of other sexual contacts to show absence of mistake. The district court's ruling is not part of the reconstructed record; however, the district court later instructed the jury to consider evidence of uncharged touchings only for the purpose of determining an absence of mistake or accidental touching. The record does not otherwise reflect the district court's reasoning for admitting the evidence of other uncharged touchings or that it weighed the probative value of this uncharged conduct versus any risk of unfair prejudice to Defendant.

Regarding the charged incident, Victim testified that Defendant pulled down her pants, ran his hands back and forth for several minutes, and then left the room, after which he came back and touched her again. Over Defendant's continuing objection, the district court allowed Victim to testify that Defendant started touching Victim when she was ten years old, that he touched her approximately once a month, and that she was scared the "whole four years that it happened." The district court also allowed testimony from the investigating officer that he charged Defendant with only one count even though Victim had talked about other times because the "one count was fresh in the [V]ictim's mind," and "[s]he was able to recall pretty close to

specific times and exactly what had occurred." Finally, the State's closing argument stated that the jury had heard Victim tell not only what happened to her on the day of the incident, but the history. The prosecutor continued by telling the jurors that Defendant would touch Victim, and "after four years, [Victim] had enough." *Id.* The prosecutor also reminded the jury that the investigating officer testified that "even though there were other incidences . . . this one we knew exactly when, we knew exactly how, and that one crime was charged and brought to [them]."

Defendant did not testify or call any witnesses, and the defense theory was that Defendant never touched Victim. Factual issues were presented to establish that Defendant may have hugged Victim and/or slapped her on the bottom. Victim's mother testified that when she confronted Defendant, he denied touching Victim inappropriately and said that "it was just a slap on the butt." The investigating officer testified that Victim's mother told him that Defendant denied the accusation and said that he only hugged Victim and "slapped her on the butt." In closing argument, Defendant denied that the incident occurred, but argued that even considering the testimony from Victim's mother regarding slapping Victim on the bottom, the evidence did not constitute inappropriate touching. Defendant was convicted of committing one count of CSCM, which occurred on or about April 28, 2005.

**DISCUSSION**

Defendant argues that the district court improperly admitted evidence of other uncharged touchings under Rule 11-404(B) NMRA (2006). Specifically, Defendant argues that the evidence was improperly admitted to show absence of mistake or accident.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Rule 11-404(B). This rule "prohibits the use of otherwise relevant evidence when its sole purpose or effect is to prove criminal propensity." *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828. Evidence of other acts may, however, be admissible if it is relevant to a non-character purpose either listed or illustrated by the rule. *Id.* Before evidence of other acts may be admitted for a non-character purpose, the proponent of the evidence must fulfill two requirements. First, the proponent must "identify and articulate the consequential fact to which the evidence is directed." *Id.* Secondly, even if the evidence is relevant to a material issue other than propensity to commit a crime, the district court "must determine that the probative value of the evidence outweighs the risk of unfair prejudice, pursuant to Rule 11-403." *State v. Otto*, 2007-NMSC-012, ¶ 10, 141 N.M. 443, 157 P.3d 8.

We review the district court's admission of evidence under Rule 11-404(B) for abuse of discretion. *Id.* ¶ 9. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

First, we must determine whether the State articulated a consequential fact other than propensity to which the evidence of other uncharged touchings was directed. The State argued below that the evidence of uncharged acts was necessary to show absence of mistake. We have held that the use of other acts to show absence of mistake is limited to "situations when a defendant claims to have made a mistake, such as when the accused admits to touching the victim but says it was accidental or by mistake." *State v. Ruiz*, 2001-NMCA-097, ¶ 21, 131 N.M. 241, 34 P.3d 630. The absence of mistake purpose is inapplicable, however, to show the absence of mistake of "a *witness* or the *victim*, who the accused claims is mistaken in his or her recollection of events." *Id.* Here, Defendant did not testify, and the defense theory was that Defendant never touched Victim.

Defendant specifically denied any touching of Victim's private vaginal area. Defendant's statement that he may have hugged Victim and/or slapped her on the

bottom was admitted through the testimony of Victim's mother and the investigating officer. We recognize that it is irrelevant that the State, rather than Defendant, introduced Defendant's statements into evidence. *Otto*, 2007-NMSC-012, ¶ 11. However, neither of these two alleged touchings, the hug or slap on the bottom, were ever attributed to the charge of touching Victim's private vaginal area. Defendant was not charged with improperly touching Victim's buttocks or any other body part as a result of the hug or slap on the bottom. We must determine whether the statements regarding the hug or slap on the bottom can reasonably be construed as incriminating admissions by Defendant that he was mistaken, or that he accidentally touched Victim's private vaginal area. We conclude that such an interpretation would be improper under the circumstances in this case when considered in conjunction with Defendant's express denial that he ever touched Victim's private vaginal area.

The State argues that a potential inference of mistake or accident was created when Defendant denied that the incident happened and told Victim's mother that "it was just a slap on the butt." The State relies on *Otto* and *Kerby* to support its position that a potential inference of mistake or accident was created by Defendant's statement. *Otto*, 2007-NMSC-012; *State v. Kerby*, 2007-NMSC-014, 141 N.M. 413, 156 P.3d 704. In *Otto*, the Supreme Court determined that a potential inference of mistake was created by the defendant's "statement to the detective that he 'was ready to finger [the

7

victim] but he woke up [and] he didn't think he had.'" 2007-NMSC-012, ¶ 11. In *Otto*, the court reasoned that because a jury could have interpreted this statement as admitting to sexual penetration, but doing so unconsciously while he was sleeping, the State had the right to present evidence to show that Defendant's acts were not committed by mistake. *Id.*

The circumstances in *Kerby* involved the issue of intent as opposed to accident or mistake under Rule 11-404(B). 2007-NMSC-014, ¶ 26. In *Kerby*, the defendant was charged with inappropriately touching the victim's private areas, including her buttocks on multiple occasions. *Id.* ¶ 7. The state's other bad acts evidence included the defendant's construction of a voyeuristic peephole in order to peer into the victim's bathroom. *Id.* ¶ 26. The defendant in *Kerby* claimed that "the touch was merely a fatherly pat on the bottom." *Id.* The Court held that the peephole evidence was properly admitted to show that when the defendant touched the victim's buttocks, he did so with sexual intent. *Id.* The Court reasoned that "unlawfulness" is an element of a CSCM crime, and "[u]nlawfulness may be proven by showing defendant's behavior was done . . . to arouse or gratify sexual desire." *Id.* (internal quotation marks and citation omitted).

Factually, Defendant's case is distinguishable from *Otto* and *Kerby*. Unlike the two defendants in *Otto* and *Kerby*, Defendant denied ever touching Victim's private

8

vaginal area, accidentally or otherwise. In addition, Defendant never asserted that he was mistaken regarding where he touched Victim. The hug and slap on the bottom were both intentional acts. The State never asserted that the slapping of Victim's bottom constituted a criminal act such as in *Kerby*. 2007-NMSC-014, ¶¶ 7-8. The sole charge of CSCM involves a touching of Victim's private vaginal area. Defendant had the right to assert that his hug and slap on the bottom were lawful without opening the door to other bad acts evidence under Rule 11-404(B). *See State v. Jones*, 120 N.M. 185, 188-89, 899 P.2d 1139, 1142-43 (Ct. App. 1995) (reasoning that a defendant may present a defense that his version of the lawfulness of events should be believed over the victim's version without opening the door to other bad acts evidence under Rule 11-404(B)). Furthermore, unlike the defendant in *Otto*, the record reflects that Defendant was awake and sober at the time of the alleged incident, and no evidence was offered that Defendant may not have remembered what actually transpired. The State never offered any additional evidence or made any other showing that Defendant touched Victim's private vaginal area by accident or mistake. As a result, Defendant's statement that he intentionally hugged and slapped Victim on the bottom does not constitute an assertion that he accidentally or mistakenly touched Victim's private vaginal area. Consequently, we determine that the district court improperly admitted other uncharged acts to show absence of mistake because

9

Defendant raised neither a defense of mistake nor an inference of mistake regarding the alleged touching of Victim's private vaginal area.

On appeal, the State now makes the alternative argument that the evidence was properly admitted as relevant to Defendant's intent and/or position of authority over Victim. However, we determine that Defendant was not given a fair opportunity to respond to the facts underlying these new arguments at the district court level. An appellate court may affirm on grounds not relied upon by the district court "unless those grounds depend on facts that [the defendant] did not have a fair opportunity to address in the proceedings below." *State v. Torres*, 1999-NMSC-010, ¶ 22, 127 N.M. 20, 976 P.2d 20. In *Otto*, the court affirmed the admission of other bad acts evidence to show intent and absence of mistake, even though the district court had admitted said evidence on another ground. 2007-NMSC-012, ¶ 12. In *Otto*, the State argued at a pre-trial hearing in district court that other bad acts evidence should also be admitted to show intent and absence of mistake. *Id.* ¶ 3. Although the district court admitted the evidence on another ground, the defendant in *Otto* had a full opportunity to respond to the State's alternative theory based upon intent and absence of mistake during the district court hearing. *Id.* ¶¶ 3, 12. Defendant did not have the same opportunity in this case regarding the issues of intent and position of authority.

Unlike *Otto*, the State failed to make a record in the district court regarding the

admissibility of uncharged acts testimony to show intent or position of authority. Consequently, Defendant did not have any opportunity to respond to the State's new arguments or address the underlying factual issues that may have been relevant to address the issues of intent and position of authority. We decline to speculate regarding whether the district court would have found these new grounds applicable and the evidence sufficiently probative to overcome any unfair prejudice to Defendant. *See State v. Gallegos*, 2007-NMSC-007, ¶¶ 24-25, 141 N.M. 185, 152 P.3d 828 (addressing the State's argument on appeal while reaffirming the proponent's obligation to present the Rule 11-404(B) evidence and argument in district court); *see also State v. Aguayo*, 114 N.M. 124, 132, 835 P.2d 840, 848 (Ct. App. 1992) (holding that it was prejudicial error to admit evidence of uncharged conduct where the Court was unable to determine whether the district court properly balanced admission of the testimony against its prejudicial effect, due to the State's failure to articulate why a non-character purpose applied). Without such evidence or argument, we are not convinced that evidence of other uncharged touchings should have been admitted to address any issues of intent or position of authority.

We determine that the State failed to meet its burden of articulating a consequential fact other than propensity to which the evidence of other uncharged touchings was directed. Instead, we conclude that the admission of testimony

11

regarding Defendant's history of uncharged touchings tended to show that Defendant had a propensity to commit unlawful touching of the Victim, and that his actions on the day of the charged incident were in conformity with his character. Consequently, admission of these uncharged touchings created a substantial risk that the jury would convict Defendant "for crimes other than those charged—or that, uncertain of guilt, it [would] convict anyway because a bad person deserves punishment." *Gallegos*, 2007-NMSC-007, ¶ 21 (internal quotation marks and citation omitted). The district court, therefore, erred and abused its discretion by admitting evidence of other uncharged touchings as an appropriate exception under Rule 11-404(B).

Having determined that the district court erred in admitting uncharged touchings under Rule 11-404(B), we do not reach the analysis of whether the district court also abused its discretion when it failed to weigh whether the probative value of utilizing the prior touchings for absence of mistake purposes outweighed the risk of unfair prejudice to Defendant under Rule 11-403. *Gallegos*, 2007-NMSC-007, ¶¶ 38-39. Instead, we next consider whether the Rule 11-404(B) error was harmless. *Id.*

When evidence is improperly admitted under Rule 11-404(B), we apply "the non-constitutional standard for the harmless error analysis." *State v. Branch*, 2010-NMSC-042, ¶ 15, ___ N.M. ___, 241 P.3d 602. "[A] non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Id.*

(internal quotation marks and citation omitted). We consider three factors in conjunction to determine the probability of whether the error affected the verdict: "[W]hether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id.* (internal quotation marks and citation omitted).

First, we must determine whether there was still sufficient evidence to support this conviction if the testimony regarding Defendant's uncharged touchings had been excluded. A victim's testimony alone may provide sufficient direct evidence to meet the substantial evidence requirement for a conviction. *See State v. Sena*, 2008-NMSC-053, ¶¶ 10-11, 144 N.M. 821, 192 P.3d 1198 (determining that a child's testimony alone provided sufficient evidence to affirm a conviction of CSCM); *see also State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 (concluding that the testimony of a victim does not need to be corroborated in order for sufficient evidence of criminal sexual penetration to exist). Here, Victim testified regarding the alleged incident. Victim's mother and the investigating officer also testified to what Victim told them and Victim's emotional state after the alleged incident. We conclude that there was sufficient evidence presented to uphold Defendant's conviction and satisfy

the first factor in our analysis.

Throughout this particular trial, however, there was a disproportionately large volume of impermissible touching evidence in relation to the actual evidence dealing solely with the single act charged. The evidence of the single act charged was intertwined with constant references to the uncharged touchings. The prosecutor's opening statement, the testimony of Victim, the testimony of the investigating detective, and the prosecutor's closing statement all discussed a long history of the uncharged touchings. In addition, the prosecutor's closing statement directly asked the jury to consider that "even though there were other incidences . . . this one we knew exactly when, we knew exactly how, and that one crime was charged and brought to [them]." In contrast, testimony regarding the single act charged was not disproportionately high. As a result, the amount of impermissible evidence was far from minuscule in comparison to the amount of permissible evidence. We determine that this factor of proportionality does not weigh in the State's favor under a harmless error analysis.

In addition, there was also conflicting evidence that tended to discredit the State's testimony. Victim's testimony regarding whether she was sitting or standing when the incident occurred was contradictory. Victim's twin sister was in the next room and the door was open to the room where the incident occurred, but apparently

14

her sister did not hear or see anything inappropriate occurring. Under the circumstances, this evidence cannot be considered insignificant. When considering the overall evidence of the single charged incident conjunctively with a disproportionately significant amount of inappropriate evidence and the conflicting testimony presented, we determine that a reasonable probability exists that the district court's error in admitting testimony of the uncharged touchings materially affected the verdict. Consequently, we conclude that the district court's error was not harmless and actually prejudiced Defendant. We remand this case for retrial as the evidence admitted at the first trial was sufficient to support a conviction. *State v. Rosaire*, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 (reasoning that retrial is not barred by double jeopardy if the evidence admitted at the first trial, including any wrongfully admitted evidence, was sufficient to support the defendant's conviction).

**CONCLUSION**

The district court abused its discretion by admitting testimony of Defendant's uncharged conduct contrary to Rule 11-404(B), and that error caused actual prejudice to Defendant at his trial. As a result, we reverse Defendant's conviction and remand this case to the district court for a new trial.

**IT IS SO ORDERED.**

_____

15

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**